IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WALTER BROMLEY | : | |
|     Plaintiff, | | |
| | | CIVIL ACTION |
| v. | : | NO. 15-4133 |
| | | |
| CAROLYN W. COLVIN | | |
|     Defendant. | : | |

**MEMORANDUM**

Jones, II   J.                                                                                                                         October 27, 2016

I.   INTRODUCTION

Plaintiff commenced the within action after being denied Supplemental Social Security Income Benefits and Disability Insurance Benefits. Upon review by United States Chief Magistrate Judge Linda K. Caracappa, a Report and Recommendation (R&R) was issued affirming the Administrative Law Judge's (ALJ) denial of said benefits. Plaintiff has filed objections to the R&R, which are now before this Court for review.[1] For the reasons set forth hereinbelow, Plaintiff's objections shall be overruled.

---

[1] This Court received notice from the Clerk of Court that no Objections had been filed to the R&R within the time permitted by Rule. Accordingly, the R&R was reviewed and an Order was entered approving and adopting same. (ECF No. 13.) One day later, Plaintiff filed Objections to the R&R. Although this Court has determined that consideration of said Objections is proper, the final result does not change.

1

## II.     BACKGROUND

### A.  Procedural History

Plaintiff submitted an application for Disability Insurance Benefits and Supplemental Security Income on February 2, 2012. (Admin. R. 67.)  Said application was denied and Plaintiff filed a request for a hearing on the decision. (Admin. R. 23.)  A hearing, presided over by ALJ William Kurklander, was held on September 4, 2013.  During the hearing, Vocational Expert James Earhart provided testimony, as well as Plaintiff. (Admin. R. 34.)  On October 7, 2013, ALJ Kurklander issued an unfavorable decision regarding Plaintiff's claim. (Admin. R. 20.)  On December 11, 2013, Plaintiff filed a request for a review of the ALJ's determination and said request was denied by the Appeals Council on March 11, 2015. (Admin. R. 18, 20.)

Plaintiff appealed this final decision of the Commissioner on July 29, 2015. As referenced above, the matter was referred to United States Magistrate Judge Linda Caracappa, who issued an R&R, recommending that Plaintiff's request for review be denied. Plaintiff filed objections to the R&R, which are now before this Court for review.

### B.  Factual History

As of the of the date of his administrative hearing on September 4, 2013, Plaintiff had been employed as a grocery bagger for Eddystone Produce since 1996 and  was working a schedule of approximately 20 hours per week, at $8 per hour. (Admin. R. 47, 72, 215.) According to Plaintiff's testimony, he had been working 40 hours per week until approximately one year prior to the hearing, when his employer reduced his hours.   (Admin. R. 44, 48.)

On March 2, 2007, Plaintiff was admitted to Crozer-Chester Medical Center and diagnosed with an acute myocardial infarction and polysubstance abuse (alcohol and tobacco). (Admin. R. 274-75.) Plaintiff underwent a cardiac catheterization procedure, at which time a

stent was implanted. Prior to discharge, Plaintiff was "counseled no [sic] the importance of alcohol and tobacco cessation as well as medication compliance including Plavix compliance. Patient was given the phone number for the Crozer Cardiac Clinic where he is to follow up in 2 weeks." (Admin. R. 277-78.) On March 5, 2007, Plaintiff was released from the hospital with a doctor's approval to return to light duty work the following day but "not . . . to full duty or to do any heavy lifting until seen and cleared by physician in the future." (Admin. R. 276, 278.) Plaintiff did not return for follow-up care.

Slightly more than three years later—May 9, 2010— Plaintiff returned to the hospital complaining of chest pain. (Admin. R. 261.) Plaintiff was diagnosed with non-cardiac chest pain and received secondary diagnoses of hypertension, coronary artery disease, and history of alcohol and tobacco abuse. (Admin. R. 261.) Upon discharge the following day, Plaintiff was prescribed several medications and was told to come back for follow-up in two weeks. (Admin. R. 261.) Plaintiff failed to do so.

On January 6, 2011, Plaintiff met with Dr. Aymen Alrez. (Admin. R. 309.) During this visit, Plaintiff complained of some mild chest pain while exercising, which he rated as "two" on a scale of one to ten, "one" being the least painful. (Admin. R. 309.) Dr. Alrez noted that Plaintiff "was lost to medical followup" and "does not take any medication." (Admin. R. 309.) He further noted that Plaintiff "smokes one pack of cigarettes a day and he drinks regularly." (Admin. R. 309.) Plaintiff was again prescribed various medications and was instructed to undergo an echocardiogram and nuclear stress test. (Admin. R. 309.) Once diagnostic testing had been completed, Plaintiff was to return to Dr. Alrez for follow-up. (Admin. R. 309.) Plaintiff never followed up as directed.

On October 6, 2011, Plaintiff went to Taylor Hospital complaining of an earache that had been causing pain for a week. (Admin. R. 339.) At that time, Plaintiff did not report his prior cardiac procedure and said he was not taking any medications. (Admin. R. 340-41.) Plaintiff was administered ear wax softener and was instructed to follow up with Otolaryngologist Kenneth Briskin if symptoms continued after two days. (Admin. R. 342.) Not long afterwards, on November 16, 2011, Plaintiff fell and was admitted to Taylor Hospital. (Admin. R. 331.) The treating physician, Dr. Tamika King, determined that Plaintiff had broken his nose when he tripped and fell face-forward three days prior. (Admin. R. 332, 335.) Medical records also state that "patient currently uses tobacco, drinks every day, denies drug use, lives alone, patient smokes tobacco at 1.5 packs per day for 30 years, equating to 45 pack years of smoking, patient consumes greater than 5 alcoholic beverages per day." (Admin. R. 332.) Plaintiff was given prescriptions and discharged with instructions to follow up. (Admin. R. 3345) Again, he did not.

Approximately one month later, Plaintiff was admitted to Taylor Hospital after complaints of pain in his left arm. (Admin. R. 325.) He described his arm as feeling "numb" and "tingly" and he claimed the presence of persistent neck pain. (Admin. R. 326.) Plaintiff was diagnosed with cervical radiculopathy and before being discharged, was instructed to follow up with the clinic if needed. (Admin. R. 328-29.) Plaintiff left the hospital without assistance. (Admin. R. 328.)

On April 27, 2012, Plaintiff was examined by Dr. Edward Stankiewicz as part of a Pennsylvania Bureau of Disability determination. (Admin. R. 352.) In addition to performing a physical examination, Dr. Stankiewicz reviewed Plaintiff's medical records and determined that Plaintiff was capable of frequently lifting or carrying objects up to 25 pounds and could occasionally lift or carry objects up to 50 pounds. (Admin. R. 352, 354.) It was also determined

that Plaintiff: had no limitations on his ability to stand, walk, sit, push or pull objects; had no limitations on postural activities or other physical functions; and, had no environmental restrictions. (Admin. R. 354-355.)

During his administrative hearing on September 4, 2013, Plaintiff testified that one month prior, he cut back on smoking cigarettes from two packs a day, to "a little less [sic] a pack a day." (Admin. R. 48.)  Plaintiff also testified that "once in a while I'll put on a back brace" at work but had not done so in a "couple months." (Admin. R. 50-51.)  Plaintiff stated that his job mostly entailed bagging produce but that on occasion, he would use a dolly to move larger quantities of product. (Admin. R. 51.)  He estimated that he did not lift more than 25 to 30 pounds without using a dolly. (Admin. R. 52.)  With regard to medications, Plaintiff denied being on any at the time of the hearing, and stated that the last medication he took was for his back, six months prior. (Admin. R. 52.)  When questioned about failing to attend follow-up appointments pertaining to his heart condition, Plaintiff testified that he missed them because he could not get a ride. (Admin. R. 53.)  However, Plaintiff also testified that there is a bus he sometimes takes to get around when he needs to "go somewhere." (Admin. R. 53.)  Towards the conclusion of Plaintiff's testimony, the ALJ asked him if he would accept an offer by his employer to increase his hours to 40 per week.  Plaintiff testified "no." (Admin. R. 56.)  When examined further by his attorney, Plaintiff stated that his arm and back begin to hurt when he lifts "too much" and that if he works too hard, he experiences "a lot of coughing." (Admin. R. 58.)

As previously referenced, Vocational Expert James Earhart also testified at Plaintiff's administrative hearing.  The ALJ presented Mr. Earhart with the following  hypothetical:

> Sir, would you please assume a hypothetical individual of the claimant's age and education with the past work that you described.  Further, please assume the individual's capable of performing work at the medium exertion level with the following additional limitations: there's no

5

>> working around intoxicants, such as alcohol, illicit drugs, or pharmaceuticals. Any of the past - - is the past work available?

(Admin. R. 59-60.)

Consistent with the Dictionary of Occupational Titles, Mr. Earhart concluded that the past work was available. (Admin. R. 59-61.)

### III. STANDARD OF REVIEW

Objections to an R&R issued by a magistrate judge are entitled to *de novo* review by the district court. 28 U.S.C. § 636(b)(1)(C). However, review of a final decision of the Commissioner of Social Security is deferential and is limited to determining whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Jenkins v. Comm'r of Soc. Sec.*, 192 F. App'x 113, 114 (3d Cir. 2006). In determining the existence of substantial evidence to support an ALJ's decision, this Court must consider all evidence of record, regardless of whether the ALJ cited to it in [his or her] decision. *Smith v. Califano*, 637 F.2d 968, 970 (3d Cir. 1981). Substantial evidence is difficult to precisely define; it "'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (quoting *Pierce v. Underwood*, 487 U.S. 552 (1988)). In terms of the traditional burden of proof standards, substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971).

With specific regard to the ALJ's assessment of a plaintiff's claim,

>> In order to qualify as disabled, and thus be entitled to benefits, a claimant must demonstrate that there is some medically determinable basis for an impairment that prevents him from engaging in any substantial gainful activity for a statutory twelve-month period. A claimant is deemed unable to engage in any substantial gainful activity only if his physical or mental impairment or impairments are of

6

> such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. In reviewing claims for disability benefits, an ALJ performs a five-step analysis to determine whether a claimant is disabled.

*Williams v. Comm'r of Soc. Sec.*, 156 F. App'x 501, 503 (3d Cir. 2005) (internal quotation marks and citations omitted).

The following agency regulation describes the five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.Admin. R. § 404.1520(a)(4) (references to other regulations omitted).

A claimant bears the burden of proving Steps 1 through 4 by substantial evidence. At Step 5, the burden shifts to the Commissioner. *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Accordingly, this Court shall review Plaintiff's objections in the context of the foregoing analytic process.

## IV.   DISCUSSION

Plaintiff objects to the Magistrate's R&R on the bases that it did not reject the ALJ's decision for failure to "list [Plaintiff's] remaining abilities on a function-by-function basis and [because it] didn't fully consider all of the evidence relevant to the finding."  (Pl.'s Obj. 3.)

Residual functional capacity (RFC) is "the most [claimant] can still do despite [claimant's] limitations." 20 C.F. Admin. R. § 416.945(a)(1). A claimant's residual functional capacity may be classified as either "sedentary," "light," "medium," "heavy," or "extra heavy." *Adorno v. Shalala*, 40 F.3d 43, 47 (3d Cir. 1994). In evaluating a claimant's RFC, the ALJ considers all relevant evidence, including medical opinions, the claimant's statements about his or her impairments, and statements from medical sources. 20 C.F.Admin. R. § 416.945(a)(3); *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001). The ALJ must explain its reasons for the weight given to medical opinions, as well as the degree to which the claimant's testimony is credited. 20 C.F.Admin. R. § 404.1527(e)(2)(ii); *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 362 (3d Cir. 2011). When rendering its decision, the ALJ "must comport with proper procedure and apply proper legal standards." *Coria v. Heckler*, 750 F.2d 245, 247 (3d Cir. 1984). The ALJ makes the ultimate decision regarding a claimant's RFC. 20 C.F.Admin. R. § 404.1546(c).

Plaintiff argues that SSR 96-8p requires the ALJ to list its function-by-function findings regarding a claimant's work-related abilities. (Pl.'s Obj. 3.) Specifically, Plaintiff claims the ALJ "should have (at least briefly) explained how [Plaintiff] was capable of any functions on a 'regular and continuous basis' and should have discussed right upper extremity functions." (Pl.'s Obj. 4.)

Contrary to Plaintiff's position, the Third Circuit has held "the ALJ need not 'use particular language or adhere to a particular format in conducting his analysis.'" *Salles v.*

*Comm'r of Soc. Sec.*, 229 F. App'x 140, 149 n.5 (3d Cir. 2007) (citing *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)). The court went on to hold that despite the requirements of SSR 96-8p, the conclusions of the ALJ will be upheld if the assessment is supported by substantial evidence. *Id.*

### A.     ALJ's Findings

Here, the ALJ determined that Plaintiff had the RFC to continue performing the exertional demands of medium level work. (Admin. R. 27.) In doing so, the ALJ considered a wide variety of evidence presented by the parties, including Plaintiff's description of his current work, noting that Plaintiff works part time and uses a dolly to lift items that are over twenty-five pounds. (Admin. R. 27, 29.)  The ALJ also noted that Plaintiff only had one follow-up appointment after his myocardial infarction in 2007, and that the examination showed Plaintiff's symptoms were within normal limitations. (Admin. R. 28.)  Plaintiff's first doctor's appointment after his myocardial infarction took place on January 6, 2011, at which time Plaintiff exhibited no serious issues, aside from some mild chest pain that coincided with exercise. (Admin. R. 309). Plaintiff rated this pain as a two on a scale of one to ten. (Admin. R. 309.)

The ALJ further noted that while Plaintiff complained of back pain, this symptom was successfully treated through pain medication and the use of a back brace. (Admin. R. 28.) However, at the time of the hearing, Plaintiff  testified that he had not worn his back brace since "a couple of months" before the date of the hearing, which took place on September 4, 2015. (Admin. R. 28, 50.)

While the ALJ considered Plaintiff's testimony, he determined  that Plaintiff's statements regarding his impairments could not be deemed "fully creditable [sic]." (Admin. R.28.) In doing so, the ALJ noted that the record did not provide any "objective medical evidence" to support the

9

claim that Plaintiff's impairments were enough to render him disabled. (Admin. R. 28.) In fact, the ALJ wrote that "no treating or examining physician has suggested that the claimant cannot work because of his impairments." (Admin. R. 28.)

### B. Assessment of ALJ's Findings

This Court's *de novo* review of the record supports the ALJ's conclusions. In making his determination regarding Plaintiff's residual functional capacity, the ALJ noted that he gave "great weight" to the opinion issued by the consultative examiner, Dr. Edward Stankiewicz. (Admin. R. 28.) Dr. Stankiewicz examined Plaintiff on April 27, 2012, at which time he noted that Plaintiff had a "history of alcohol abuse" and smoked "about one pack of cigarettes a day." (Admin. R. 352.) During this examination, Plaintiff complained of localized pain in his neck, left leg, and left arm. (Admin. R. 352.) Dr. Stankiewicz concluded that Plaintiff could frequently lift or carry items up to 25 pounds and occasionally lift or carry items up to 50 pounds. (Admin. R. 354.) He also concluded Plaintiff had no limitations standing or walking, sitting, or pushing or pulling objects. (Admin. R. 354.)

Upon independent review of record *in toto* and consideration of the facts obtained therefrom,[2] this Court finds that the ALJ's conclusions regarding Plaintiff's RFC are well supported by substantial evidence of record. Accordingly, Plaintiff's objection to the Magistrate's R&R are without merit.

---

[2] As set forth above in Section IIB.

10

## V. CONCLUSION

For the reasons set forth hereinabove, Plaintiff's objections to the Magistrate's R&R shall be overruled and this Court's previous Order adopting and approving the R&R (ECF No. 13) shall be deemed a final ruling.

An appropriate Order follows.

BY THE COURT:

/s/ C. Darnell Jones, II
_____
C. Darnell Jones, II   J.